IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sara E. Siegler, | : | |
| Plaintiff | : | Civil Action 2:10-cv-172 |
| v. | : | |
| The Ohio State University, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before the Court pursuant to Defendants' motion to dismiss the amended complaint (Doc. 9) under Fed. R. Civ. P. 12, for lack of subject matter jurisdiction. For the reasons set forth herein, the motion is granted.

Factual background. The following allegations of fact are taken from Plaintiff's amended complaint. Plaintiff Sara E. Siegler ("Siegler") was employed from March 2007 until February 2009 as a Clinical Research Data Coordinator at the Cancer and Leukemia Group B Pathology Coordinating Office ("PCO") at the Polaris Innovation Centre ("Polaris") operated by the Ohio State University ("OSU") Department of Pathology. She began as a student employee, reporting to Daniel C. Rohrer ("Rohrer"), the clinical research data manager, and Laurie Ann Johnson ("Johnson"), the operations director, and ultimately to Dr. Scott D. Jewell ("Jewell"), the director of the PCO. Her job duties included inventorying human tissue microscope slides. After an initial period as a part-time student employee, she was

1

promoted to a full-time position.  This entailed new responsibilities for managing and overseeing biospecimens and data for certain clinical trials.

On April 4, 2008, Siegler received a written warning from Rohrer for having complained to two of her coworkers about their job performance.[1]  On April 17, 2008 Rohrer and Johnson gave Siegler a performance plan which provided that she would improve her interactions with coworkers and her compliance with sick leave and attendance policies.  In July 2008, however, Siegler received a positive performance review from Rohrer.

In July and August 2008, Siegler drafted a proposal for lymphoma tissue research.  She presented the concept for her proposal to Jewell at a meeting in his office, receiving a favorable response and encouragement from Jewell to prepare the proposal.  PCO's procedures for preparation of tissue samples were apparently later changed in line with Siegler's suggestions.  Siegler also drafted standard operating procedures for certain PCO operations.

PCO operated a database system known as "RIMS v3" to store and share information concerning human tissue and fluid samples.  Recently developed at the time of Siegler's employment, and used for research funded in part by the National Cancer Institute ("NCI"), it was intended to replace earlier versions of the same system and the spreadsheets in which data was otherwise kept.  On September 11,

---

[1] Siegler alleges in her complaint that her coworkers spent time at work watching movies and conducting personal telephone conversations, and that they frequently neglected job responsibilities such as answering the telephone and timely recording tissue samples.

2008, Johnson and the local RIMS software developer asked Siegler to send weekly status report emails concerning the use of the RIMS system.  However, at the time, the RIMS system did not function adequately, and it was still necessary to record data on spreadsheets.  On September 22, 2008, Siegler sent an email to Johnson and Jewell reporting that she and her colleagues were unable to use the RIMS system, and listing specific deficiencies with the system.

During October 2008, Siegler received two more written reprimands from Rohrer and Johnson, threatening her with corrective action which could include termination.  An October 13, 2008 follow-up to her corrective action plan criticized Siegler for spending "most of the day on 10/1/08 sending nearly a dozen emails... criticizing and questioning another co-workers handling of their work".  An October 29, 2008 reprimand asserted that Siegler had failed to properly answer the telephones.  Siegler sent follow-up emails in response stating that her co-workers continued to neglect their work and to spend their time with private conversation or internet use.

On October 29, 2008, Siegler sent an email to Jewell to inquire about the status of her research proposals.  Jewell sent a noncommittal response.  Siegler thereafter discovered that Jewell had reported to the NCI that utilizing RIMS was one of the PCO's objectives.  She sent an email to the researchers at Duke University who had designed RIMS, reporting a series of fundamental design flaws which she felt rendered it inoperable.  In November 2008, Siegler informed Rohrer that she was not comfortable continuing to send out weekly status reports about the

3

RIMS system in light of its lack of functionality, but was instructed to continue.

On November 3, 2008, Siegler met with the Department of Pathology's human resources coordinator, Muska Duff. Duff informed her, and later sent a follow-up email to confirm, that her superiors at PCO had requested corrective action, and that the Pathology Department would consider allowing Siegler to resign in lieu of termination. Siegler later emailed Duff to inquire about other job opportunities within the Ohio State University Medical Center, to which Duff responded that she was not sure what jobs existed but that Siegler should be aware that if she were terminated she would not be eligible for rehire.

On November 21, 2008, Siegler participated in a teleconference with Amish Shah and Kimberly Johnson of Duke University, in which she explained the problems she had identified with RIMS. Kimberly Johnson stated that she understood Siegler's explanation, and that she would have to address the matter with her superiors. Siegler told them that she was planning to file a whistleblower report with OSU concerning the claims of researchers at PCO that they were successfully using the RIMS system.

On November 24, 2008, Siegler sent an email to Donald Gibson, an OSU HR representative, to inquire about the procedure for whistleblower reports. Several days later, he sent a response stating that "[y]ou allege they are not using the RIMS software and further allege they are misrepresenting that they are using this software to the agency funding the grant. Correct? If so, then that matter should be reported to the Office of Research." Siegler thereupon sent Gibson and another

OSU HR employee, Kate Dillingham, a whistleblower form alleging misconduct relating to RIMS on the part of Rohrer, Johnson, and Jewell, later forwarding it to Dr. Todd Guttman, vice president of OSU's office of research compliance. Siegler later sent a second whistleblower form alleging that Duff, Gibson, and Dillingham had failed to carry out their whistleblower procedure obligations.

Finally, on December 19, 2008, Siegler was placed on administrative leave by Rohrer and Johnson. She thereafter sent an email to E. Gordon Gee ("Gee"), the president of OSU, complaining about being retaliated against for whistleblowing, and an email to Dr. Guttman reporting that Jewell's research project had violated regulations for safe shipment of infectious materials. Siegler continued on administrative leave without pay until February 25, 2009, when she participated in a conference call at which she was informed of the results of the whistleblower investigation and read a termination letter. Siegler thereafter, on February 24, 2010, brought this lawsuit against OSU, Jewell, Johnson, Gee, and Dr. Sanford H. Barsky, the chairman of the Department of Pathology.

<u>Subject matter jurisdiction</u>. Plaintiff Siegler brought four claims against the defendants: (1) wrongful termination in violation of Ohio whistleblower protection statutes, including O.R.C. §§ 124.341, 4112.02, and 4113.52; (2) civil conspiracy to violate Ohio whistleblower protection statutes; (3) conspiracy to commit the tort of retaliatory discharge[2]; and (4) tortious interference with prospective economic

---

[2] Plaintiff states explicitly that the retaliatory discharge she refers to in this count is "a violation of both the public policy of Ohio and the Ohio Whistleblower

5

advantages.  She alleged that she was terminated for disclosing various problems at PCO, including the misuse of resources with respect to the RIMS system.

Defendants have now moved to dismiss Plaintiff's amended complaint.  They assert that her complaint states only claims arising under Ohio law, and that she is barred from bringing these in federal court by the doctrine of sovereign immunity.  This argument is correct.  The Eleventh Amendment to the United States Constitution provides that states cannot be sued in federal court without their consent.  *Wilson-Jones v. Caviness*, 107 F.3d 358, 358 (6th Cir. 1997).  Under Ohio law, all state law claims against state employees must first be brought before the Ohio Court of Claims, which has exclusive and original jurisdiction over the question of whether an employee is immune from suit.  *Underfer v. Univ. of Toledo*, 36 Fed.Appx. 831, 835 (6th Cir. 2002), citing O.R.C. §2743.02(F).  A plaintiff cannot otherwise sue state employees in their official capacities in federal court for monetary damages, as a suit against a state employee in his or her official capacity amounts to a suit against the state itself.  *Turker v. Ohio Dep't of Rehabilitation and Corrections*, 157 F.3d 453, 456-57 (6th Cir. 1998).  *See also Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993); *Bond v. Wilkinson*, 889 F.2d 1086 at *1 (6th Cir. 1989); *Will v. Michigan*

---

Protection Act [which] occurred upon Siegler's termination".  (Doc. 6-2 at 88.)  Plaintiff states for the first time in her memorandum contra Defendants' motion to dismiss that her claims are also brought under the federal Whistleblower Protection Act of 1989, 5 U.S.C. §2302 *et seq*.  No reference to this statute appears in her amended complaint, and it applies only to federal employees reporting misconduct by federal agencies.

*Department of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, this court does not have subject matter jurisdiction over Plaintiff's four stated claims (wrongful termination, civil conspiracy to violate whistleblower protection statutes, civil conspiracy to commit retaliatory discharge, and tortious interference with prospective economic advantages), and cannot hear them.  Fed. R. Civ. P. 12(h).  Plaintiff must bring such claims elsewhere.

<u>Deprivation of constitutional rights</u>.  Plaintiff stated several bases in her amended complaint for this court's exercise of subject matter jurisdiction: 28 U.S.C. §1332(a) (diversity jurisdiction), §1331 (federal question jurisdiction), and §1343(a)(3) (violation of civil rights).  As all four of Plaintiff's stated claims arise under the common law and statutes of Ohio, she has not stated any basis for the exercise of federal question jurisdiction.  Furthermore, Plaintiff's invocation of diversity jurisdiction is erroneous.  Under §1332(a), the Court can hear suits involving citizens of different states.  This means, however, that "there must be complete diversity such that no plaintiff is a citizen of the same state as any defendant."  *V&M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010).  As Plaintiff is an Ohioan, for diversity jurisdiction to exist, no defendant could be also be an Ohioan.  According to the complaint, four of the five defendants are citizens of or located in Ohio.  Complete diversity therefore does not exist, and the Court could not exercise jurisdiction under 28 U.S.C. §1332(a)(1).

The basis for Plaintiff's invocation of 28 U.S.C. §1343(a)(3) is unclear.  This statute provides that:

> (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
> [...]
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

§1343(a)(3) therefore expressly provides that deprivation of constitutional rights under color of law (*i.e.* acts prohibited by 42 U.S.C. §1983) is a federal question over which district courts have jurisdiction.[3]  Plaintiff, who explicitly articulated her claims, did not refer to 42 U.S.C. §1983 or mention that any of her claims were based upon the deprivation of rights secured by the United States Constitution or laws.

Defendants suggest that Plaintiff might nevertheless have intended to bring such a claim, citing the following sentence from her amended complaint:

The taking of Siegler's intellectual property by defendant OSU

---

[3] 42 U.S.C. §1983 provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

> constitutes a violation of her constitutional rights in accordance with the "Takings Clause" of the Fifth Amendment of the Constitution, which prohibits the taking of private property for public use without just compensation, since Siegler has not received any form of compensation from OSU for her intellectual property that includes but is not limited to Siegler's lymphoma research proposal.

(Doc. 6-1 a 84-85.) In addition, at the same time that Plaintiff filed her amended complaint, she filed a "Notice of Constitutional Question" (Doc. 7), which advised the Court that Plaintiff wished to challenge O.R.C. §3345.14 (an Ohio statute providing that all rights to inventions, discoveries, and patents resulting from a state university research facility become the property of that university), and the "Bayh-Dole Act", 35 U.S.C. §201 *et seq.* (a federal statute giving universities control of intellectual property arising from federally funded research), as violative of the Fifth Amendment.

In the first place, the Court will not hear Plaintiff's constitutional challenge to O.R.C. §3345.14 and the Bayh-Dole Act. Plaintiff's complaint does not include any allegation that any defendant ever actually invoked these statutes to assert that some piece of intellectual property belonged to Ohio State University because it had been produced there or because it had been produced using federal funds. To satisfy the requirement of Article III of the United States Constitution that federal courts have the power to hear only "cases" and "controversies", a party must demonstrate that she has standing to bring a claim. To have standing, a party must have suffered an "injury in fact" which is not only concrete and particularized, but also actual or imminent (as opposed to conjectural or hypothetical). *Lujan v.*

9

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiff's complaint, construed most broadly, can be taken to imply that employees of Ohio State University took her intellectual property and misappropriated it for their own use (or for the University's use) without giving her credit.  Plaintiff's request that the Court declare these statutes unconstitutional under the Fifth Amendment is founded not upon an assertion by Ohio State University or a finding by a court that Plaintiff did not own certain property, but upon Plaintiff's anticipation that Defendants would, if challenged, invoke these statutes to justify their position.  This is a hypothetical injury.  Since no one has actually invoked O.R.C. §3345.14 or the Bayh-Dole Act against her, Plaintiff has no standing to attack them.[4]

In the second place, Defendants state correctly that Defendant OSU is not a "person" for purposes of 42 U.S.C. §1983, and therefore cannot be sued under it. *Will v. Michigan Dept. of State Police*, 591 U.S. 58, 71 (1989).  Such a claim, assuming it had been pled, would therefore be brought only against Dr. Jewell, the only named defendant mentioned in Plaintiff's narrative in connection with her research proposal.

---

[4] Plaintiff's "Notice of Constitutional Question" contains what purports to be a quotation from an email sent by Guttman to Siegler concerning her research proposal, in which he stated that "[w]e generally do not have any personal rights in proposals or other 'work products' that we create... I'll double-check with HR and/or Legal Affairs on this." (Doc. 7 at 2.) Mr. Guttman's apparent opinion that he supposed that what Plaintiff was describing was covered by O.R.C. §3345.14 or the Bayh-Dole Act is not sufficient, however, to support a claim that OSU had unconstitutionally taken possession of Plaintiff's intellectual property by means of these statutes.

However, the fact that the complaint at least makes reference to Dr. Jewell does not mean that it gives him fair notice as to the specific nature of what it is that he is supposed to have done.  Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," it is not true that notice pleading means that a complaint need plead no facts.  Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Twombly*, 550 U.S. at 555, 557 (citations omitted).  Here, Plaintiff does not even allege that Jewell harmed her.  She has accordingly failed to state a claim against him upon which relief can be granted.

<u>Conclusions</u>.  For the foregoing reasons, Defendants' motion to dismiss (Doc. 9) is **GRANTED**.  As this court lacks jurisdiction over the four claims Plaintiff has articulated, they are **DISMISSED WITHOUT PREJUDICE** to bring them in a court or courts possessing jurisdiction to hear them.  To the extent that Plaintiff has alleged that Defendant OSU is liable under 42 U.S.C. §1983 for violation of Plaintiff's constitutional rights, the amended complaint is **DISMISSED WITH PREJUDICE**.  To the extent that Plaintiff has alleged that Defendant Scott D. Jewell is liable under 42 U.S.C. §1983 for violation of Plaintiff's constitutional rights, the amended complaint is **DISMISSED WITH PREJUDICE** for failure to

11

state a claim upon which relief can be granted.

The Clerk of Court is **DIRECTED** to terminate all other pending motions and close this case.

s/Mark R. Abel<br>
United States Magistrate Judge